**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFERY HARRIEL, | : |
| Plaintiff, | : CIVIL ACTION NO. 11-2510 (MLC) |
| v. | : **MEMORANDUM OPINION** |
| WAL-MART STORES, INC., | : |
| Defendant. | : |

**COOPER**, **District Judge**

Plaintiff, Jeffery Harriel ("Plaintiff"), brings this action against defendant, Wal-Mart Stores, Inc. ("Wal-Mart" or "Defendant"), on behalf of himself and others similarly situated, asserting violations of, inter alia, (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and (2) the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a et seq. (Dkt. entry no. 1, Compl.) Plaintiff asserts the FLSA claim as a collective action pursuant to 29 U.S.C. § ("Section") 216(b), and the NHWHL claim as a class action pursuant to Federal Rule of Civil Procedure ("Rule") 23. Plaintiff now moves for conditional collective action certification. (Dkt. entry no. 27, Mot. to Certify.) Defendant opposes the motion. (Dkt. entry no. 34, Def. Opp'n.) Limited discovery pertaining to the issue of collective action certification has been conducted. (Dkt. entry no. 22, 9-26-11 Order.) The Court heard oral argument on the motion on June 19, 2012.

The Court, because of the existence of a federal cause of action under the FLSA, exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons stated herein, the Court will deny the motion.

## BACKGROUND

### I. Overnight Assistant Manager Position at Sam's Club Stores

Defendant operates approximately 608 Sam's Club stores throughout the United States. (Compl. at ¶ 6; dkt. entry no. 28, Lesser Decl., Ex. B, Tinsley Dep. 85:11-17.) Sam's Club stores generally have one overnight assistant manager position ("OAM"), though in some instances the position is vacant and waiting to be filled, and approximately 15-20 stores employ two OAMs. (Tinsley Dep. 83:1-86:12.) Approximately 1,625 individuals have held the the position of OAM since May 2008. (Dkt. entry no. 34, Sellinger Decl., Ex. B, Roskow Decl. at ¶ 5.) According to the Human Resources Director for the Northeast Region of Sam's Club, "OAMs are typically scheduled to work opposite shifts from the Club Manager and other Assistant Managers and are therefore often the most senior member of management in the Club while working their shift, with ultimate responsibility for all operational and supervisory efforts in their assigned Club." (Roskow Decl. at ¶ 7; see also Sellinger Decl., Ex. D, Dayton-Driggers Decl. at ¶ 21 (explaining that "[t]he OAM is the only manager in the building during overnight hours").)

2

## II. Plaintiff's Employment and Termination

Plaintiff was employed by Defendant for approximately twenty years. (Lesser Decl., Ex. C, Pl. Dep. at 15:21-23.) Beginning in 1991, Plaintiff held various management positions at Wal-Mart. (Pl. Dep. at 17:15-23, 20:3-11, 21:12-17, 22:15-20, 23:20-25, 26:6-16.) He became an OAM at a Sam's Club store in Edison, New Jersey, in January 2010. (Compl. at ¶ 4; Pl. Dep. at 26:13-18, 74:23-75:1.) He was one of two OAMs employed at that store. (Pl. Dep. at 95:25-98:2; dkt. entry no. 35, Sellinger Decl., Ex. D, Capuano Decl. at ¶ 12.) In that position, Plaintiff was disciplined and ultimately terminated after his supervisor received multiple written complaints from those under his supervision, including complaints "for spying on his crew, speaking to associates in a threatening manner, and mishandling new hires." (Def. Opp'n at 10; Sellinger Decl., Ex. I, Open Door Investigation.) On October 22, 2010, Plaintiff was terminated on the bases of inadequate "Respect for the Individual" and "Job Performance." (Id. at 15.) The report of that termination observed that under Plaintiff's control, "many aspects of his job were not handled properly, left undone, or just ignored," and further noted that as an employee having twenty years with the

company, should have done "a much better job at planning, time management and merchandising." (Id.)[1]

### III. Allegations and Evidence Regarding Exempt Status of OAM Position

Plaintiff alleges that Defendant violated Section 207 of the FLSA by "failing to compensate Plaintiff and other [OAMs]" by classifying the OAM position as exempt under the FLSA's requirement that employers pay overtime wages for hours worked per week in excess of 40. See 29 U.S.C. § 207 (providing for overtime pay for employees to whom the statute applies); id. § 213(a)(1) (providing that "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the protections of the FLSA). (Compl. at ¶¶ 17-19, 32-36, 49.) Plaintiff contends that the OAM position should not be considered exempt because it "required little skill and no capital investment," duties "did not include managerial responsibilities or the exercise of independent judgment," and OAMs' primary work included "accept[ing] shipments, stocking

---

[1] Plaintiff apparently responded to his termination by advising two Sam's Club managers that they should "expect no less than 6 lawsuits and 2 class action suits" against Defendant. (Open Door Investigation at 15; Pl. Dep. at 317:11-19.) The other OAM at the Edison store advised the store manager in a written statement that Plaintiff "would never 'get his hands dirty'" as an OAM, which "would be alright if he was playing the role of administrative manager but he wasn't even doing that. I still had to do evals, scheduling vacations, dealing with associate issues[,] even ringing up associates at the end of the night if they wanted to purchase something," because Plaintiff refused to do these things. (Open Door Investigation at 20.)

4

merchandise, replenishing supplies and other such non-managerial tasks." (Id. at ¶ 34.) He further contends that OAMs did "not have the authority to hire or fire other employees." (Id.)[2]

Plaintiff relies on the "uniform job description" and uniform job training of OAMs to support his motion for conditional certification. Specifically, he contends that "he performed the same non-exempt tasks that the Defendant, in its own documents, states OAMs should perform." (Dkt. entry no. 27, Pl. Br. at 4.) Plaintiff further argues that conditional certification of a nationwide collective action of all persons to have held the OAM position at Sam's Clubs during the relevant time period is appropriate because "Defendant's centrally derived, corporate-created policies and guidelines apply to all Sam's Club stores nationwide." (Pl. Br. at 5-6 ("[Defendant's] hierarchical, standardized business practices through which the Defendant maintains top-down control . . . ensure that each store operates the same way.").)

Defendant admits that it did not pay Plaintiff or other OAMs overtime pay in accordance with Section 207, insofar as the OAM

---

[2] At his deposition, Plaintiff conceded that as an OAM, he was responsible for, e.g., training people on the overnight shift how to properly stock merchandise, as well as supervising, evaluating, and when necessary, disciplining the "team leads" who worked the overnight shift. (Pl. Dep. at 108:22-109:24, 117:11-118:3.) Plaintiff claimed that in general, he would not manage the twenty or so employees working the night shift because he "[d]idn't have time; [he] was stocking." (Pl. Dep. at 102:24-103:3.)

position is a salaried one, and denies that the OAM position was misclassified as "exempt" under the FLSA. (Pl. Br. at 3; id. at 8 (stating that "[a]ll Sam's Club OAMs are paid a fixed annual salary . . . without consideration of the size or sales volume of the store in which they work and the hours which any OAM worked").) Defendant proffers that "OAMs receive a pay and bonus package reflective of their exempt status. . . . rang[ing] from approximately $43,500 to as much as $68,000" in base compensation annually. (Def. Opp'n at 6; Sellinger Decl., Ex. C, Tinsley Dep. at 240:17-241:4.) Plaintiff, at the time of his separation from the company, was earning an annual base salary of $60,000, "a rate justified by the types of managerial and supervisory functions he was expected to perform." (Def. Opp'n at 6.)

The parties agree that the "Assistant Manager" job description used by Defendant covers the OAM position. (Pl. Br. at 7; Def. Opp'n at 4-5.) That document provides, in pertinent part, that the "essential functions" of the position require that such person, inter alia: create budgets; drive sales by ensuring effective merchandise presentation; assess economic trends and community needs; ensure proper personnel procedures are followed for selection, recruiting, and training; manage facility operations, including participation in management meetings; communicate with other managers and associates about operations, merchandising, and company direction; provide direction and

6

guidance to associates; oversee and enforce the execution of food safety standards; provide supervision and development opportunities for associates by hiring, training, mentoring, assigning duties, providing recognition, and ensuring diversity awareness; and work as part of the management team to ensure that all opening and closing procedures are followed. (Sellinger Decl., Ex. F, Assistant Manager Job Description.)

Plaintiff argues in support of the motion that he "performed the same non-exempt tasks that the Defendant, in its own documents, states OAMs should perform," though the only task he specifically refers to as falling within this non-exempt category is "stocking various areas of the store for the next day"; Plaintiff testified at his deposition that he "spent the majority of his time," up to 90%, stocking. (Pl. Br. at 4; Pl. Dep. at 148:4-19 (stating that he spent 90% of his time stocking the store, and the other 10% performing "all the other functions of the" OAM position).) Plaintiff also points to, <u>inter</u> <u>alia</u>, Defendant's Borrowing Company Assets Policy, Independent Service Provider Policy, and Bad Weather Conditions Policy, as demonstrating a lack of discretion in the OAM position. (Pl. Br. at 5.) However, none of those documents contradict or undermine the supervisory and managerial aspects of the job description itself.

7

The "Performance Standards Reference Document" used in evaluating Assistant Managers, including OAMs, does not include hourly wage tasks such as stocking among the performance standards to be assessed.  Rather, that document shows that OAMs are evaluated for acting as a conduit for bringing lower-level associates' ideas for improvement to upper management, developing and implementing plans for improving the customer experience, managing merchandising operations, planning for team-based improvement, and supervising sales associates.  (Sellinger Decl., Ex. H, Performance Standards Reference Document.)  OAMs are also evaluated for use of appropriate judgment to set appropriate priorities and make optimal decisions, even in complex situations.  (Id.)

## DISCUSSION

### I.  Collective Action Certification Under the FLSA

Section 216(b) of the FLSA permits a plaintiff to maintain an action for such an alleged violation against an employer on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b); see Rogers v. Ocean Cable Grp., Inc., No. 10-4198, 2011 WL 6887154, at *2 (D.N.J. Dec. 29, 2011).  Unlike a traditional class action governed by Rule 23 in which class members must opt out of the class, a FLSA collective action requires that potential class members opt-in by providing written consent, and file such written consent in the court where the

action is brought. 29 U.S.C. § 216(b); Holesapple v. E-Mortg. Mgmt., LLC, No. 11-769, 2011 WL 6887684, at *2 (D.N.J. Dec. 29, 2011) (citing Manning v. Gold Belt Falcon, LLC, 817 F.Supp.2d 451, 452-53 (D.N.J. 2011)).

The FLSA does not define "similarly situated." See 29 U.S.C. § 203; Ruehl v. Viacom, Inc., 500 F.3d 375, 389 n.17 (3d Cir. 2007). There is a two-part test to determine whether a putative collective action's members are "similarly situated" so as to allow the action to proceed as such. Rogers, 2011 WL 6887154, at *2. In the first step, or "notice stage" of the analysis, occurring early in the case, the Court determines whether it should conditionally certify a collective action and give notice of the action to potential collective action members. Id.; Morisky v. Pub. Serv. Elec. & Gas Co., 111 F.Supp.2d 493, 497 (D.N.J. 2000). The Court usually only has minimal evidence before it at this stage, in the form of pleadings and affidavits submitted by parties. Morisky, 111 F.Supp.2d at 497. As such, the Court uses a fairly lenient standard, requiring a "modest factual showing," to determine whether potential collective action members are similarly situated. Id.; see also Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011) ("Under the 'modest factual showing' standard, a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy

9

affected her and the manner in which it affected other employees."); Smith v. Sovereign Bancorp, Inc., No. 03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003) (rejecting "automatic preliminary certification route" endorsed by some courts and requiring FLSA putative collective action plaintiffs "to make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs").

At the second step, or "reconsideration stage," the Court "makes a second determination after discovery is largely complete and the case is ready for trial." Morisky, 111 F.Supp.2d at 497. At this stage, with the benefit of additional available evidence, the Court employs a stricter standard than the notice stage. Id. If the Court finds at the reconsideration stage that the named plaintiffs are similarly situated to the plaintiffs who have opted in, the case may proceed to trial as a collective action. Id. At both stages, the plaintiff bears the burden of demonstrating that he or she is similarly situated to the proposed class and ultimately the opt-in class. Symczyk, 656 F.3d at 192-93; Troncone v. Velahos, No. 10-2961, 2011 WL 3236219, at *4 (D.N.J. July 28, 2011).

Certification at the notice stage, though governed by a lenient standard, is not automatic. Evancho v. Sanofi-Aventis U.S. Inc., No. 07-2266, 2007 WL 4546100, at *2 (D.N.J. Dec. 19, 2007). A plaintiff must show a "factual nexus" between his or

10

her situation and the situation of other current and former employees sufficient to determine that they are similarly situated. Aquilino v. Home Depot, Inc., No. 04-4100, 2006 WL 2583563, at *2 (D.N.J. Sept. 7, 2006). "In spite of the modest factual nexus evidentiary standard, courts have not hesitated to deny conditional certification when evidence is lacking." Rogers, 2011 WL 6887154, at *3 (quoting Dreyer v. Altchem Env'l Servs., Inc., No. 06-2393, 2007 WL 7186177, at *3 (D.N.J. Sept. 25, 2007)); see Bramble v. Wal-Mart Stores, Inc., No. 09-4932, 2011 WL 1389510, at *4 ("The right to proceed collectively may be foreclosed where an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.") (citation and quotation omitted).

**II. Analysis**

This case, while at the notice stage, has seen significant discovery proceed with respect to the certification issue. The Court has carefully reviewed the exhibits provided by the parties in support of and opposition to the motion to conditionally certify the class, and finds that even under the lenient standard requiring a plaintiff to make a "modest" showing of a "factual nexus," conditional certification must be denied, and no notice to the putative class should issue.

The record, particularly the Assistant Manager job description, indicates that OAMs have managerial duties

generally, and that plaintiff, as OAM at the Edison club, was responsible for "supervising 22 or 23 associates on the night shift. . . . includ[ing] dock associates, night team leaders, night crew stockers, and overnight bakers." (Capuano Decl. at ¶ 13.) According to Capuano, who was the manager of the Edison club at the time plaintiff served as one of its two OAMs, the OAM's "primary function is to get the club 100% ready for opening in the morning," and this includes responsibility for "overseeing merchandising, receiving, stocking, and cleaning of the Club during the overnight shift." (Id. at ¶ 14.)

The declarations provided by other individuals who have served in the OAM position during the relevant time period corroborate this assessment of the OAM position. (See generally Sellinger Decl., Ex. D, Declarations of Current and Former OAMs.) These fifteen declarants each engaged in (1) receiving special management training, (2) supervising associates, (3) analyzing business reports, (4) training associates, (5) interviewing and hiring associates, (6) coaching, evaluating, and terminating associates, and (7) using their discretion in making merchandising decisions. (Sellinger Decl., Exs. D & E.) In contrast, plaintiff offers not a scintilla of evidence beyond his own unsubstantiated allegations that the OAM position included only minimal managerial tasks as he describes, e.g., that he

12

spent approximately 90% of his time as an OAM performing non-managerial stocking tasks.

The failure to provide the existence of even one other person who would choose to opt in to the putative collective action is indicative of Plaintiff's total failure of proof that he has anything in common with other OAMs with respect to the subject matter of this action; rather, the record indicates that he was terminated for cause, including failure to perform managerial tasks that were part of his job description.  (See Pl. Dep. at 325:5-13 (statement of plaintiff that he was not aware of any other OAMs who might want to join his lawsuit or would share the same claim with him that he was not a true manager while serving as an OAM); Sellinger Decl., Ex. I, Open Door Investigation.)  See Holesapple, 2011 WL 6887684, at *5-6; cf. Bramble, 2011 WL 1389510, at *2 (noting that plaintiff's declaration stated only that he "believe[d]" that his experience was typical of others in the same position and denying certification where defendant's evidence "largely contradict[ed] plaintiffs' assessments of their own job responsibilities").

The fact that Plaintiff alone claims he spent most of his time performing non-managerial tasks, combined with the evidence showing that the OAM position is subject to nationwide standards under Defendant's corporate policies, does not require the Court to infer that a significant number of other OAMs would have also

13

deviated from the written job description to spend most of their time performing non-managerial tasks. See Bramble, 2011 WL 1389501, at *5-6.[3] The existence of a job description containing "many managerial tasks" applicable to a certain position, paired with a superficial allegation that the plaintiff was improperly classified as exempt under the FLSA, "misses the point" of a putative FLSA collective action such as the one pursued here,

---

[3] In Bramble, as here, the plaintiffs did not argue that employees holding their position were "required to perform non-exempt tasks for a majority of their working hours," but instead argued "'that as a matter of fact, rather of formal job description, they [were] performing their non-[exempt] duties for the majority of their working hours.'" Bramble, 2011 WL 1389510, at *5 (quoting Holt v. Rite Aid Corp., 333 F.Supp.2d 1265, 1271 (M.D. Ala. 2004)). Also as here, the only evidence in Bramble offered to show that the named plaintiffs were similarly situated to the putative class was the four named plaintiffs' deposition testimony stating that the actual work they performed was non-exempt. Id. at *5 & n.6. The Bramble court "examine[d] all the relevant evidence" at stage one of the conditional certification analysis and determined that the four named plaintiffs failed to "provide even modest evidence beyond their own speculation that 'the evidence of the Plaintiff[s'] job duties is [not] merely anecdotal evidence specific to them [and] can be more broadly applied.'" Id. at *6 (quoting Holt, 333 F.Supp.2d at 1272). Finally, this action shares with Bramble and Holt the fact that the plaintiff's allegation regarding the amount of time spent performing non-exempt, non-managerial tasks is directly contradicted by declarations from other managers stating that they did perform managerial tasks that would classify them as exempt, having the effect that at the second stage of the certification analysis, the court would have to inquire "as to the daily tasks of each putative collective action member to determine whether they are similarly situated," an "individualized inquiry" disfavored by the collective action mechanism. Id. at *7. Thus, the Bramble and Holt courts both denied conditional certification at the first stage of the inquiry; the evidence here, of a single plaintiff, is even less substantial than that offered and rejected by multiple plaintiffs in those cases.

insofar as the action "turns on the alleged discrepancy between the job on paper and the job in practice" but the evidence fails to show how the plaintiff <u>and others</u> were "similarly subjected to an improper compensation practice" by the defendant. <u>Tahir v. Avis Budget Grp., Inc.</u>, No. 09-3495, 2011 WL 1327861, at *3-4 (D.N.J. Apr. 6, 2011) (denying certification where plaintiff "proffered only general similarities between himself and other [managers] and made conclusory, unsupported statements that all [managers] spend the majority of their time performing . . . manual, non-exempt labor"). Ultimately establishing an FLSA violation under Plaintiff's theory of the case will require an examination of each individual OAM's work experiences. (Def. Opp'n at 7-10.) <u>See</u> <u>Tahir</u>, 2011 WL 1327861, at *4; <u>see also</u> <u>Rogers</u>, 2011 WL 6887154, at *4-5; <u>Evancho</u>, 2007 WL 4546100, at *2-3 (denying conditional certification where defendants' declarations indicated that actual job responsibilities "may vary among plaintiffs and potential collective action members").

    We therefore find that the evidence now before the Court supports Defendant's contention that "Plaintiff's claimed work experiences differ significantly not only from the corporate documents Plaintiff points to as common to the OAM position, but also from the work experiences of other OAMs." (Def. Opp'n at 11.) Plaintiff has not met his burden of establishing a factual nexus between his alleged situation and that of other employees sufficient to determine that he is similarly situated to the

15

putative class, and "any court-facilitated notice to a nationwide opt-in class would constitute little more than solicitation on behalf of Plaintiff's cause." <u>Burkhart-Deal v. Citifinancial, Inc.</u>, No. 07-1747, 2010 WL 457127, at *5 (W.D. Pa. Feb. 4, 2010).

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will deny the motion for conditional collective action certification. The Court will issue an appropriate Order.

                                             s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge

Dated: July 13, 2012